## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**PETER BARNHART, et al.,**

    Plaintiffs,

    v.

**RURAL 1ST, et al.,**

    Defendants.

CASE NO. 3:26 CV 118

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

The Defendants' Motions to Dismiss are before the Court. (Docs. 4, 5, 6, 9). Plaintiffs opposed the Motions (Docs. 10, 13, 14) and filed a Motion for Leave to File an Amended Complaint (Doc. 21). For the reasons stated below, the Court denies the Motion for Leave to File an Amended Complaint (Doc. 21) and grants Defendants' Motions to Dismiss (Docs. 4, 5, 6, 9).

### BACKGROUND

Plaintiff Peter Barnhart ("Barnhart") brings this action on behalf of himself and Barnhart Builders, LLC ("Barnhart Builders").[1] *See* Doc. 1. The Complaint involves two separate construction contracts with two different clients, the Schmidts and the Filipuccis. *See id.* at 1. At least one of the clients financed their construction through Farm Credit Mid-America and/or Rural 1st. *Id.* at 2. Barnhart and/or Barnhart Builders was the general contractor for both construction

---

1. The Ohio Secretary of State business filings indicate the business entity established by Peter Barnhart is actually "Barnhart Builders Ltd." Barnhart Builders and Construction, LLC is a different business owned and operated by Roy Barnhart of Reedsville, Ohio, and does not appear to be connected to Peter Barnhart or Barnhart Builders, Ltd. *See* https://businesssearch.ohiosos.gov/. To avoid confusion in this case, however, the Court will refer to this Plaintiff simply as Barnhart Builders and acknowledge it is a limited liability company as set forth in the Complaint.

contracts. *Id.* at 1. Both clients were unhappy with the services Barnhart and/or Barnhart Builders provided and separately terminated their contracts and ceased payment to Barnhart and Barnhart Builders under the construction loan. *Id.* at 3-4.

<u>The Schmidts</u>

Most of the allegations in the Complaint center on Barnhart and/or Barnhart Builders' contract dispute with Jessica and Brian Schmidt ("the Schmidts"). The Schmidts entered into a contract with Barnhart and/or Barnhart Builders for the construction of a new home in May 2025. *See* Doc. 1, at 14; Doc. 22-1 (contract).[2] The Schmidts obtained a construction loan through Farm Credit Mid-America and/or Rural 1st. (Doc. 1, at 14). Neither the Complaint nor any of the Motions clearly define the relationship of Farm Credit Mid-America and Rural 1st in this transaction; however, both appear to have been involved as the lender and administrator of funds of the construction loan. "Rural 1st exercised exclusive operational control over draw approvals, inspections, escrowed loan funds, and payment disbursements under the construction loan." *Id.* The exhibits to the Complaint indicate that the draw schedule was based on project milestones with the draw requests, invoices and receipts being submitted to both Rural 1st and the Schmidts for their approval. *See* Docs. 1-6, 1-7, 1-8, 1-9. Pursuant to the construction contract, approved draw requests would be paid directly to Barnhart and/or Barnhart Builders through wire payment. *See* Doc. 1, at 14; Doc. 22-1, at 2. The contract provided that such payments would be made "on the draw schedule necessary to complete the project." (Doc. 22-1, at 2). To facilitate these payments, Barnhart executed an ACH/wire payment authorization allowing the lender to send payments directly to a bank account held in the name of "The Barnhart Group." (Doc. 1-3). Neither

---

2. The Court finds it can consider the contract itself in resolving the Motion to Dismiss, as it is "referred to in the Complaint and . . . central to the claims contained therein." *Bassett v. Nat'l Coll. Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008).

the construction contract nor the wire authorization form required payments to be made to Barnhart or Barnhart Builders that were not approved through the draw schedule process. *See* Docs. 1-3, 22-1.

The Complaint and exhibits thereto suggest that certain draw requests were submitted. Exhibit "D" indicates someone submitted a second draw request in the amount of $118,088.43 on November 13, 2025. (Doc. 1-6). That Exhibit indicates that the property was last inspected on September 3, 2025, and showed 13.95% of the project was completed. *Id.* The Complaint asserts this draw request was submitted by Jessica Schmidt personally and was initially rejected by Rural 1st. (Doc. 1, at 6-7). The following day, the Schmidts sent an email seemingly to Peter Barnhart with the subject line: "Approval of Draw." (Doc. 1-7). The email stated that "[u]pon reviewing the receipts you provided via text message (including the earned 15% overhead), we are willing to approve a draw with Rural 1st in the amount of $91,088.71" and asked that Peter "submit the draw request at your earliest convenience." *Id.*, which is less than half of the amount sought in the draw request. (Doc. 1-7). Barnhart and Barnhart Builders were notified of this decision on November 14, 2025.

On November 17, 2025, Jessica Schmidt informed Rural 1st that Barnhart and/or Barnhart Builders filed a Formal Notice of Contract Termination a day earlier, on November 16, 2025. (Doc. No. 1-9). She proposed to Rural 1st that she would act as her own general contractor and would be getting estimates for completion of the work. *Id.* She further indicated she was working with her attorney to determine what "amount [was] rightfully owed] to" Barnhart or Barnhart Builders, and stated she would not be approving any further draws until her attorney directs her to do so. (Doc. 1-9). On November 18, 2025, Rural 1st replied to Jessica Schmidt informing her that Barnhart or Barnhart Builders had placed a lien against her house. (Doc. 1-10). They told her that if she intended to act as her own general contractor, she would need to file a Change Order for

3

approval by the Loan Manager (Doc. 1-10). The communication also stated Schmidt would have to provide bids and estimates for the remaining work. *Id.*

Plaintiffs attempt to characterize the wire payment authorization as a contractual obligation on the part of the lender to pay only them as the designated payee, regardless of completion of the work under the draw schedule. *See* Doc. 1, at 1-4, 6-8, 14-18. They object to the Schmidts' actions and describe them as an attempt to override the payee designation, divert lender-controlled funds, and seize control of the project's financial stream in order to bypass them and deny them the proceeds of their labor. *See* Doc. 1. They contend Rural 1st then froze payments on the Schmidt project and directed those payments to the Schmidts, knowing that Barnhart and/or Barnhart Builders was supposed to be the designated recipient of the funds. *See id.* In essence, Plaintiffs contend they were not paid for their work pursuant to the construction contract.

The Filipuccis

Barnhart and Barnhart Builders provide very few factual allegations regarding Jason and Nina Filipucci. They state only that the Filipuccis "in a separate project, us[ed] direct lender communications, payment obstruction, engineered termination, and coordinated financial pressure to force Plaintiffs out while retaining the benefit of Plaintiff's work." (Doc. 1, at 4). They allege Attorney Selvey terminated their contract with the Filipuccis without any prior notice of default or an opportunity to cure. They contend the Filipuccis "used the appearance of legal process to effect the same financial displacement [as the Schmidts did]." *Id.* at 4-5. Barnhart and Barnhart Builders claim the Filipuccis and the Schmidts maintained a long-standing personal relationship, had regular communications, and utilized the services of the law firm of Dewey, Selvey, and Liska. Barnhart claims he was then required to contact all of the subcontractors to inform them he was no longer the general contractor on the Filipucci project, causing damage to his reputation in the industry. *Id.* at 25-26.

4

Both Clients

With respect to both clients, Barnhart and Barnhart Builders claim they were deprived of draw payments and stripped of their position as the general contractor. They allege this exposed them to unpaid subcontractor claims and left them bearing the cost of labor and materials which are permanently embedded in the Schmidt and Filipucci homes.

State Court Actions

On January 9, 2026, Barnhart and Barnhart Builders filed civil actions in state court against the Schmidts, *Barnhart v. Schmidt*, No. 26 CV 26 (Sandusky Cnty. Ct. C.P.) (filed Jan. 9, 2026)[3] and the Filipuccis, *Barnhart v. Filipucci*, No. 2026 CV 5 (Erie Cnty. Ct. C.P.) (filed Jan. 9, 2026)[4]. Both cases are still pending in their respective courts.

In the case against the Schmidts, Barnhart alleged Barnhart Builders LLC entered into a construction contract with the Schmidts on May 12, 2025. (Doc. 5-1). The contract indicates that Barnhart Builders will be paid directly from the lender in accordance with a draw schedule necessary to complete the project. Barnhart and Barnhart Builders allege the Schmidts breached this contract by withholding payment and interfering with their ability to perform work, making their continued work on the contract commercially impractical. They indicate they were forced to formally terminate the contract, in writing, to mitigate their loss. They assert claims of tortious interference with business relationships, defamation, intentional infliction of emotional distress, abuse of process/bad-faith conduct, promissory estoppel, breach of contract, wrongful termination/anticipatory breach, quantum meruit, unjust enrichment, conversion/wrongful withhold of funds, tortious interference with subcontractor contracts, declaratory judgment,

---

3. The state court complaint in this case is filed at Doc. 5-1.
4. The state court complaint in this case is filed at Doc. 5-2.

5

mechanics lien enforcement, bad faith conduct, civil conspiracy, and tortious interference with business and financing relations. *See* Doc. 5-1.

In the case brought against the Filipuccis, Barnhart and Barnhart Builders allege the Filipuccis entered into a construction contract with Barnhart Builders LLC on January 6, 2025, for the construction of a new home. (Doc. 5-2). The form contract the Filipuccis signed is identical to the form contract signed by the Schmidts. Barnhart and Barnhart Builders claim that at the time the Filipuccis terminated the contract, they had substantially performed their obligations under the contract. They allege outstanding balances on that work have not been paid. They assert claims for tortious interference with business relationships, defamation, intentional infliction of emotional distress, abuse of process/bad-faith conduct, promissory estoppel, breach of contract, wrongful termination/anticipatory breach, quantum meruit, unjust enrichment, conversion/wrongful withholding of funds, tortious interference with subcontractor contracts, declaratory judgment, bad faith conduct, civil conspiracy, tortious interference with business and financing relations, and fraudulent inducement. *See id.*

This Federal Court Action

On January 16, 2025, just one week after filing their cases in state court, Barnhart and Barnhart Builders filed this action in federal court asserting many of the same breach of contract and tort claims against the same Defendants based on the same facts. *See* Doc. 1. Specifically, they assert state law claims for tortious interference with contract and business relations, conversion/misappropriation of loan proceeds, lender interference and financial institution misuse, civil conspiracy, abuse of process/wrong legal process, defamation, false light, and business disparagement. *See id.* at 27-38.

Barnhart and Barnhart Builders attempt to invoke federal question jurisdiction by characterizing their contract dispute as a violation of the Racketeer Influenced Corrupt

6

Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d). *See* Doc. 1, at 9-10. They base this RICO claim on the assertion that banks are federally insured and regulated, and a bank was involved in financing both construction projects. *Id.* at 9-10, 38-42. They contend this supports a predicate offense of bank fraud. *See id.* at 40. They also assert the parties communicated with each other through email which is an electronic communication. *Id.* They assert payments made pursuant to the draw schedule were supposed to be made through a wire deposit, necessarily a wire transfer. *Id.* The contend these actions support a predicate offense for wire fraud. *Id.* They ask the Court to declare that they were not at fault in either contract termination and issue an order restraining Defendants from making disparaging remarks about them, interfering with lender relationships, or freezing construction loan proceeds. *Id.* at 42-44, 46-47. They ask this Court to recognize them as the rightful payees of the Schmidt and Filipucci loan proceeds and award them monetary damages. *Id.* at 46-47.

Motions to Dismiss Fed. R. Civ. P. 12(b)(6)

The Defendants all filed Motions to Dismiss under Federal Civil Procedure Rule 12(b)(6). *See* Doc. 4 (Selvey and Dewey, Selvey & Liska), (Doc. 5) (Schmidts); Doc. 6 (Filipuccis); Doc. 9 (Rural 1st and Farm Credit Mid America). All the Motions contain and/or adopt the same arguments for dismissal.

First, Defendants contend Barnhart Builders's claims are not properly before the Court. They assert Barnhart Builders is a limited liability company, which is a separate legal entity under Ohio law that can sue or be sued in its own right. A business entity cannot appear *pro se*. It must appear through licensed counsel.

Second, Defendants assert Barnhart is not a licensed attorney, and he therefore cannot file pleadings on behalf of Barnhart Builders and/or represent that entity in court. Defendants next claim Barnhart himself lacks standing to bring this action because the contracts in question were

7

between Barnhart Builders and the Schmidts or the Filipuccis. They contend that Barnhart Builders, and not Barnhart, is the real party in interest in the contract dispute. Defendants therefore assert the Complaint should be dismissed because the only remaining party, Barnhart, lacks standing to assert any of the claims contained in the Complaint.

Third, the Filipuccis claim that "perhaps through ChatGPT, the contract claims have been expanded beyond what can reasonably support claims for federal jurisdiction." (Doc. 6, at 1). Defendants claim Plaintiffs failed to state a plausible claim under RICO.

Finally, Defendants argue this Court should decline supplemental jurisdiction over the state law claims because they were already raised in the pending state court actions filed immediately prior to filing of this action in federal court.

Assignment of Claims and Motion to Amend Complaint

In response to the Motions to Dismiss, Barnhart filed a document in which he purports to have assigned all of Barnhart Builders's claims related to the construction projects involving the Schmidts and the Filipuccis to himself. *See* Doc. 20, Doc. 20-1. He signed this purported Assignment on behalf of both Barnhart Builders and himself. (Doc. 20-1, at 2). He then filed a Motion for Leave to File to an Amended Complaint that lists only himself as a Plaintiff. *See* Doc. 21. Barnhart does not provide the Court with his proposed amended pleading, but he indicates it would be the same as the current pleading with the modification that only he would be the Plaintiff. *See id.* He contends this will resolve the defects of the original pleading. The Schmidts oppose the Motion, stating Barnhart is misquoting the language of the contract pertaining to assignment and claiming his assignment attempt is invalid. (Doc. 22).

**STANDARD OF REVIEW**

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the function of the Court is to test the legal sufficiency of the Complaint. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th

8

Cir. 1993). The Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), clarified the law regarding what a plaintiff must plead in order to survive a motion to dismiss under Rule 12(b)(6).

When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Although a complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (citation modified). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citation omitted).

The Court in *Iqbal* further explains the "plausibility" requirement, stating that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

9

Furthermore, federal courts are always "under an independent obligation to examine their own jurisdiction," *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), and may not entertain an action over which jurisdiction is lacking. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). Lack of subject matter jurisdiction is a non-waivable, fatal defect which may be addressed by the court on its own motion at any stage of the proceedings. *Curry v. U.S. Bulk Transport, Inc.*, 462 F.3d 536, 539-40 (6th Cir. 2006); *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990); *Owens v. Brock*, 860 F.2d 1363, 1367 (6th Cir. 1988).

### DISCUSSION

Assignment/Amendment

Before considering the merits of the Motions to Dismiss, the Court must address Barnhart's attempted assignment of the Barnhart Builders's claims to himself and his request to amend the Complaint. As stated by Defendants, Barnhart Builders is a separate legal entity with responsibilities to not only its members but to its creditors. Barnhart has only the authority to act on behalf of Barnhart Builders that Barnhart Builders has given to him in its corporate documents. Barnhart does not cite to any legal authority given to him in the corporate documents to assign claims to himself.

Instead, Barnhart asserts he has authority to assign legal claims from the construction contract that Barnhart Builders had with the Schmidts and the Filipuccis. He misquotes Subsection X of the contract as stating: "The Contractor may assign rights and may delegate duties under the Agreement to other individuals or entities." (Doc. 20-1, at 1). He, however, edited the contractual sentence to alter its meaning. In its entirety, that sentence reads: "The Contractor may assign rights and may delegate duties under the Agreement to other individuals or entities *acting as a subcontractor* ("Subcontractor")." (Doc. 22-1, at 3) (emphasis added). Subsection X continues in the next sentence to state: "The Contractor recognizes that they shall be liable for all work

10

performed by the Subcontractor and shall hold the Client harmless of any liability in connection with their performed work." *Id.* It is clear from the wording of that provision that it was referring to the delegation of responsibilities to subcontractors for the purpose of performing work required by the construction contract. It was not a general grant of authority for Barnhart to assign any legal claims and rights from Barnhart Builders to himself. Nothing before the Court suggests the purported Assignment is valid.

Furthermore, Barnhart seeks to amend the Complaint based on his premise that he assigned all of Barnhart Builders's claims to himself. Because that assignment is not valid, his proposed amendment would not resolve the defects in his pleading. His Motion to for Leave to File an Amended Complaint (Doc. 21) is denied.

Entity's Claims

Defendants assert the claims of Barnhart Builders are not properly before the Court. Business owners commonly choose to form a limited liability company ("LLC") because that business model protects the personal assets of the owners (known as members) from business debts and legal actions against the company. By forming an LLC, the owner or members create a separate legal entity which can sue or be sued in its own right. A corporation or limited liability company cannot appear *pro se* and can only appear in the federal courts through licensed counsel. *Rowland v. California Men's Colony, Unit II Men's Advisory*, 506 U.S. 194, 201 (1993). Barnhart is not an attorney. He therefore cannot present claims on behalf of Barnhart Builders LLC or sign pleadings on their behalf for this case in federal court. Any claims that Barnhart asserted on behalf of Barnhart Builders are not properly before this Court.

Real Party in Interest

Defendants next assert Barnhart Builders, and not Barnhart individually, is the real party in interest and Barnhart lacks standing to assert claims pertaining to the construction contracts. A

11

determination of the identity of the real party in interest in each of the claims listed in the Complaint is more complicated than it first appears and presents issues of fact which cannot be resolved in a Motion to Dismiss. The contract itself indicates that it is between Barnhart Builders and the clients; however, the contract was signed by Barnhart. In their Answer to the Complaint filed against them in state court, the Filipuccis assert that "Plaintiff Peter Barnhart individually entered a written contract with Defendants Jason and Nina Filipucci in his individual capacity." *Barnhart v. Filipucci*, No. 2026 CV 5 (Erie Cnty. C.P.) (Answer, at 2, ¶ 6). They deny they entered into a construction contract with Barnhart Builders, LLC. *Id.* at 2-3, ¶ 8. But the Filipucci Motion to Dismiss is silent on the issue of with whom they believed to have entered into a construction contract. *See* Doc. 6. The other Defendants, however, assert in this action that the construction contract was between the clients and Barnhart Builders. *See* Doc. 4, at 2; Doc. 5, at 2; Doc. 9, at 3). Moreover, tort claims for injury to reputation could be asserted by either Barnhart or Barnhart Builders.

This Court is cognizant that any determination of any fact or issue in this case, including standing, may interfere with the pending state court actions. These state court cases were filed prior to this federal case. It appears Barnhart is attempting to litigate the same case in both state and federal court to improve his odds of getting a favorable result. However, as discussed below, this Court lacks subject matter jurisdiction in this case. The Court therefore declines to address issues of standing or comment on the merits of state law claims that are more appropriately decided by the state courts in which these matters were originally raised.

Jurisdiction

Federal courts are courts of limited jurisdiction, and, unlike state trial courts, they do not have general jurisdiction to review all questions of law. *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008). Instead, they have only the authority to decide cases that the

Constitution and Congress have empowered them to resolve. *Id*. Consequently, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

Generally speaking, the Constitution and Congress have given federal courts authority to hear a case only when diversity of citizenship exists between the parties, or when the case raises a federal question. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The first type of federal jurisdiction, diversity of citizenship, is applicable to cases of sufficient value between "citizens of different states." 28 U.S.C. § 1332(a)(1). To establish diversity of citizenship, the plaintiff must establish that he is a citizen of one state and all the defendants are citizens of other states. The citizenship of a natural person equates to his domicile. *Von Dunser*, 915 F.2d at 1072. The second type of federal jurisdiction relies on the presence of a federal question. *See* 28 U.S.C. § 1331. This type of jurisdiction arises where a "well-pleaded complaint establishes either that federal law creates the cause of action or that the Plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Labs. Vacation Tr.*, 463 U.S. 1, 27-28 (1983).

Diversity of citizenship does not exist in this case. The Complaint reflects Barnhart and all of the individual Defendants are all citizens of Ohio.

A plaintiff properly invokes federal question jurisdiction under 28 U.S.C. § 1331 when he "pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006) (citation omitted). Jurisdiction is not defeated by the possibility that the complaint might fail to state a claim upon which relief may be granted. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). However, "[a] claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 . . . may be dismissed for want of subject-matter

13

jurisdiction . . . if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Arbaugh*, 546 U.S. at 513 n.10 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). It may also be dismissed for lack of subject matter jurisdiction if the federal claim is "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (citation omitted). Barnhart's RICO claim falls into this category.

This is a garden-variety construction contract dispute between a builder and homeowners that resulted in two state court actions, with breach of contract and tort claims alleging damage to personal and business reputations. Barnhart filed this federal court case, just one week after filing the two state court cases, in what appears to be a misguided attempt to increase his odds of obtaining a favorable outcome. He attempts to invoke federal subject matter jurisdiction by labeling his contract dispute as a RICO violation. To make this leap, he argues that banks are federally insured and regulated, and because banks provided the construction loans to the clients, the alleged contract breach can be characterized as the predicate offense of bank fraud. He also argues that the emails telling him the bank did not approve the full amount of his draw request are electronic communications. He claims the emails constitute wire fraud. He further contends the wire authorization form would have allowed earned payments to be deposited into a corporate bank account through a wire transfer and therefore the failure to make a payment to him and/or Barnhart Builders under the contract constitutes wire fraud. These purported RICO claims are patently frivolous and completely devoid of merit.

RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). In turn, Section 1962 states in relevant part:

14

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section.

A "pattern" of "racketeering" activity consists of the commission of at least two "predicate acts," as defined by §1961(1)(B) within a ten-year period of each other. *Schwartz v. One Equity Corp.*, 2008 WL 4425964, *2 (S.D. Ohio). In turn, a "predicate act" is defined by §1961(1)(B) to be "any act which is indictable under any of the following provisions of Title 18 United States Code ..." (listing a long series of crimes, including mail fraud, wire fraud, and obstruction of justice which are set forth in Section 1961(1)[5]). 18 U.S.C. § 1961(5). To violate Section 1962(d), a

---

5. 18 U.S.C. § 1961(1) defines a "racketeering activity" as: (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: § (bribery), § 224 (sports bribery), §§ 471, 472, and 473 (counterfeiting), § 659 (theft from interstate shipment),§ 664 (embezzlement from pension and welfare funds), § 891-894 (extortionate credit transactions), § 1028 (fraud and in connection with identification documents), § 1029 (fraud in connection with access devices), §1084 (transmission of gambling information), § 1341 (mail fraud), § 1343 (wire fraud), § 1344 (financial institution fraud), § 1425 (unlawful procurement of citizenship or nationalization), § 1426 (reproduction of naturalization or citizenship papers), § 1427 (sale of naturalization or citizenship papers),§ 1461-1465 (obscene matter), § 1503 (obstruction of justice), §1510 (obstruction of criminal investigations), § 1511 (obstruction of State or local law enforcement), §1512 (tampering with a witness, victim, or an informant), § 1513 (retaliating against a witness, victim, or an informant), § 1542 (false statement in application and use of passport), § 1543 (forgery or false use of passport), § 1544 (misuse of passport), § 1546 (fraud and misuse of visas,), §§ 1581-1591 (slavery, and trafficking in persons), §1951 (interference with commerce, robbery, or extortion), § 1952 (racketeering), § 1953 (interstate transportation of wagering paraphernalia), § 1954 (unlawful welfare fund payments), § 1955 (illegal gambling businesses), § 1956 (money laundering), § 1957 (engaging in monetary transactions in property derived from specified unlawful activity), § 1958 (use of interstate commerce in the commission of murder-for-hire), §§ 2251, 2251A, 2252, and 2260 (sexual exploitation of children), §§ 2312 and 2313 (interstate transportation of stolen motor vehicles), §§ 2314 and 2315 interstate transportation of stolen property), § 2318 (trafficking in counterfeit labels for phonorecords, computer programs and motion pictures), § 2319 (criminal infringement of a copyright), § 2319A (unauthorized trafficking in sound recordings and music

15

defendant must conspire with another person who commits two acts of racketeering activity. *United States v. Joseph*, 781 F.2d 549, 554 (6th Cir. 1986).

The key element in a RICO claim is that the defendants' actions must be indictable under one of the listed federal criminal statutes. But the parties' discussions of contract terms, performance, and breach of contract through email exchanges are not indictable actions and do not constitute a federal crime for wire fraud. Similarly, Defendants' refusal to send a full draw payment for services they believe had not been completely or properly performed is not an indictable action. The behavior does not become wire fraud simply because the payment would have been sent through a wire if it had been earned. Moreover, a construction contract dispute does not become bank fraud simply because a bank is providing financing for the project. Notably, bank fraud indictable under 18 U.S.C.A. § 1344 is a scheme to defraud a financial institution. Barnhart claims the financial institution is a member of the enterprise. The bank cannot be both the perpetrator and the victim.

Barnhart cannot convert a state law contract dispute to a federal RICO cause of action and invoke Federal Court jurisdiction simply by citing the RICO statute and making conclusory statements of the elements of the claim. This RICO claim is "totally implausible, attenuated,

---

videos), § 2320 (trafficking in goods or services bearing counterfeit marks), § 2321 (trafficking in certain motor vehicles or motor vehicle parts), §§ 2341-2346 (trafficking in contraband cigarettes), §§ 2421-24 (slave traffic), (C) any act which is indictable under title 29, United States Code, § 186 (restrictions on payments and loans to labor organizations) or § 501(c) (embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under § 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in § 102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, § 274 (bringing in and harboring certain aliens), § 277 (aiding or assisting certain aliens to enter the United States), or § 278 (importation of alien for immoral purpose) if the act indictable under such of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in § 2332b(g)(5)(B).

16

unsubstantial, frivolous, [and] devoid of merit," and is made solely for the purpose of obtaining federal court jurisdiction. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (recognizing federal question jurisdiction is divested by obviously frivolous and unsubstantial claims); *see also Arbaugh*, 546 U.S. at 513 n.10. It is dismissed.

Because Barnhart and Barnhart Builders filed two state court cases asserting many of the same claims against the same Defendants based on the same transactions and occurrences that are the subject of this federal case, it would be inappropriate for this Court to also entertain the state law claims. Barnhart cannot maintain parallel cases in state and federal court. That could lead to inconsistent decisions and liabilities. The case involves issues that are strictly matters of state law. It belongs in state court, not federal court. Regardless of whether the RICO claim is dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction under *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) or under Rule 12(b)(6) as requested by the Defendants, the result is the same. The RICO claim is dismissed with prejudice. The state law claims are dismissed without prejudice to allow them to continue in the respective state court cases.

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motions to Dismiss (Docs. 4, 5, 6, 9) be, and the same hereby are, GRANTED and it is

FURTHER ORDERED that this action is DISMISSED; and it is

FURTHER CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: May 15, 2026

17